No. 26-11828

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

◆

MARCUS CASTER, *et al.*,
*Plaintiffs-Appellees*,

v.

SECRETARY OF STATE FOR THE STATE OF ALABAMA, *et al.*,
*Defendants-Appellants.*

◆

On Interlocutory Appeal from the United States
District Court for the Northern District of Alabama
No. 2:21-cv-1536-AMM

## TIME SENSITIVE MOTION FOR STAY PENDING APPEAL

Steve Marshall
*Attorney General*

A. Barrett Bowdre
*Solicitor General*

Robert M. Overing
*Principal Deputy Solicitor General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Tel: (334) 353-8892
Barrett.Bowdre@AlabamaAG.gov

*Counsel for Defendant-Appellant Secretary of State for the State of Alabama*

MAY 27, 2026

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a)(3) and 26.1-2(b), the undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1)      Acharya, Avidit

2)      Adams, Hon. Jerusha T.

3)      Adegbile, Debo P.

4)      Aden, Leah

5)      Aderholt, Rep. Robert

6)      Agricola, Jr., Algert Swanson

7)      Agricola, Barbara H.

8)      Agricola Law, LLC

9)      Alabama Attorney General's Office

10)     Alabama Center for Law and Liberty

11)     Alabama Democratic Conference

12)     Alabama Legislative Black Caucus

13)     Alabama State Conference of the NAACP

14)     Allen, Amanda N.

15)     Allen, Hon. Richard F.

16)     Allen, Hon. Wes

C-1 of 30

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

17)  America First Legal Foundation

18)  American Bar Association

19)  American Civil Liberties Union Foundation

20)  American Civil Liberties Union of Alabama

21)  American Legislative Exchange Council

22)  Amunson, Jessica Ring

23)  Andrews, Darryl

24)  Ashmore, Susan

25)  Ashton, Anthony

26)  Atkins, Robert A.

27)  Baker & Hostetler LLP

28)  Balch & Bingham LLP

29)  Bannon, Alicia L.

30)  Barnes, Anna Kathryn

31)  Barreto, Matt A.

32)  Barry, Nicholas

33)  Beato, Michael

34)  Beatty, Rep. Joyce

35)  Becker, Amariah

36)  Benbrook, Bradley A.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

37) Benbrook Law Group, PC

38) Berger, Sen. Philip E.

39) Berry, Jonathan

40) Billingsley, Eddie

41) Birnbaum, Sheila L.

42) Bishop, Kimberley A.

43) Blacksher, James Uriah

44) Blackwell, Matthew

45) Blankenship, Joel R.

46) Blankenship Law Firm, LLC

47) Bloom, III, H. William

48) Bobrow, Anna

49) Bokat-Lindell, Noah B.

50) Bonta, Hon. Rob

51) Born, Emily J.

52) Bowdre, A. Barrett

53) Boyden Gray & Associates

54) Bracy, Jr., Rep. Napoleon

55) Braden, Efrem Marshall

56) Bradley, Neil

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

57)    Branch, Aria C.

58)    Braun, Sen. John

59)    Brennan Center for Justice

60)    Brnovich, Hon. Mark

61)    Bronson, Kristin M.

62)    Brown, Mitchell

63)    Brown, W. Tucker

64)    Bucks County, Pennsylvania

65)    Burr and Forman LLP

66)    Burrell, Ashley

67)    Burroughs, Kate

68)    Buschbacher, Michael

69)    Butterfield, Rep. G.K.

70)    Byrd, Arkie

71)    Cage, Edgar

72)    Cameron, Hon. Daniel

73)    Campaign Legal Center

74)    Campbell, Matthew

75)    Campbell-Harris, Dayton

76)    Carl, Jr., Rep. Jerry

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

77)   Carlton, Alexandra

78)   Carr, Hon. Chris

79)   Carter, Brittany

80)   Caster, Marcus

81)   Cedarbaum, Adam

82)   Center for Fair Housing

83)   Central Alabama Fair Housing Center

84)   Chakraborty, Amitav

85)   Chaudhuri, Pooja

86)   Cheek, Jason R.

87)   Chen, Jowei

88)   Chestnut, LaKeisha

89)   Chiu, David

90)   Christie, Jr., J. S. "Chris"

91)   Citizens United

92)   Citizens United Foundation

93)   City and County of Denver, Colorado

94)   City and County of San Francisco, California

95)   City of Austin, Texas

96)   City of Baltimore, Maryland

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

97)  City of Boston, Massachusetts

98)  City of Cincinnati, Ohio

99)  City of Cleveland, Ohio

100)  City of Columbus, Ohio

101)  City of Gary, Indiana

102)  City of Houston, Texas

103)  City of Los Angeles, California

104)  City of Madison, Wisconsin

105)  City of Montgomery, Alabama

106)  City of New York, New York

107)  City of Oakland, California

108)  City of Philadelphia, Pennsylvania

109)  City of Pittsburgh, Pennsylvania

110)  City of Saint Paul, Minnesota

111)  City of San Diego, California

112)  City of Santa Fe, New Mexico

113)  City of South Bend, Indiana

114)  Clark, Matthew J.

115)  Clarke, Hon. Kristen

116)  Cleary, Yahonnes

117) Cleland, Bartlett

    118) Clemon, Hon. U.W.

119) Coastal Alabama Partnership

120) Cole, David D.

121) Coleman, Craig S.

122) Coleman, Jeff

123) Coleman, Sen. Merika

124) Coleman-Madison, Sen. Linda

125) Commonwealth of Kentucky

126) Commonwealth of Massachusetts

127) Commonwealth of Pennsylvania

128) Compass Demographics, Inc

129) Congressional Black Caucus

130) Constitutional Accountability Center

131) Cooley LLP

132) Cornelius, Hon. Staci G.

133) Cortes, Diana P.

134) Council of the City of New York, New York

135) County of Alameda, California

136) County of Marin, California

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

137)    County of Santa Clara, California

138)    Covington & Burling LLP

139)    Cozen O'Connor

140)    Croslin, Chike

141)    Crum, Travis

142)    Danforth, Sen. John R.

143)    Data, Sonika R.

144)    Daun, Margaret C.

145)    Davis, James W.

146)    Davis, Martha

147)    Debevoise & Plimpton LLP

148)    DeBouse, Bobby Lee

149)    Dechert LLP

150)    DeConcini, Sen. Dennis W.

151)    Defner, Armand

152)    DeFord, Daryl R.

153)    de Leeuw, Michael B.

154)    De León, Jacqueline

155)    de Nevers, Orion

156)    Dentons Sirote PC

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

157) Dhillon, Harmeet K.

158) Dhillon Law Group, Inc.

159) Diaz, Gabriel

160) Dicello Levitt Gutzler

161) Dickinson Wright, PLLC

162) District of Columbia

163) Dominick Feld Hyde

164) Dowdy, Shalela

165) Dreeben, Michael R.

166) Duggan, Matthew R.

167) Dunn, Chad W.

168) Dunn, David

169) Durbin, Sen. Richard J.

170) Duren, Colby

171) Durenberger, Sen. David F.

172) Duvernay, Stephen M.

173) Ebenstein, Julie A.

174) Echohawk, John E.

175) Edward Still Law Firm LLC

176) Elias Law Group LLP

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

177) Elias, Marc E.

178) Elliot, Mara W.

179) Ellison, Hon. Keith

180) Ellsworth, Jessica L.

181) Elmendorf, Christopher S.

182) Ely, Hon. David R.

183) Englert, Jr., Roy T.

184) Escalona, Hon. Prim F.

185) Espy, Benjamin J.

186) Espy, III, Joseph C.

187) Espy, William M.

188) Faegre Drinker Biddle & Reath LLP

189) Fair Housing Center of Northern Alabama

190) Faulks, LaTisha Gotell

191) Ferguson, Hon. Robert W.

192) Feuer, Michael N.

193) Fitch, Hon. Lynn

194) Fitzgerald, Michael W.

195) Fletcher, Brian H.

196) Flynn, Erin H.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

197) Ford, Hon. Aaron D.

198) Forero-Norena, Mateo

199) Forstein, Carolyn M.

200) Fox, David R.

201) Fram, Robert

202) Frasure, Lorrie

203) Frey, Hon. Aaron M.

204) Friedman, Lee Turner

205) Frosh, Hon. Brian E.

206) Fulginiti, Emily

207) Gaber, Mark P.

208) Gaines, Rep. Houston

209) Gans, David H.

210) Garth, Andrew W.

211) Garza, Delia

212) Gbe, Harmony A.

213) Ge, Qizhou

214) Genberg, Jack

215) Gershenson, Adam S.

216) Gillespie, Noah N.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

217)    Glavin, Emily

218)    Gold, Dara

219)    Goldstein, Samuel B.

220)    Gordon, Phillip M.

221)    Gorod, Brianne J.

222)    Gray, Fred D.

223)    Greater Birmingham Ministries

224)    Green, Jeffrey T.

225)    Greenbaum, Jon M.

226)    Greenwood, Ruth

227)    Geiger, Soren A.

228)    Griffin, Mark D.

229)    Haas, Michael

230)    Hamilton, Gene P.

231)    Hare, Eli J.

232)    Harris County Attorney's Office

233)    Harris, A. Reid

234)    Harris, Jeffrey Matthew

235)    Hartnett, Kathleen

236)    Harvard Law School Election Law Clinic

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

237) Hattix, Lauren Ann

238) Hauenschild, Jonathon P.

239) Healey, Hon. Maura

240) Heard, Bradley E.

241) Hebert, J. Gerald

242) Herren, Jr., T. Christian

243) Hewitt, Damon T.

244) Hinds-Radix, Sylvia O.

245) Hirsch, Sam

246) Ho, Hon. Dale E.

247) Hogan Lovells US LLP

248) Holtzman Vogel Baran Torchinsky & Josefiak, PLLC

249) Holwell Shuster & Goldberg LLP

250) Holzrichter, Mitch

251) Hunt, Darnell

252) Hurwitz, Jonathan H.

253) Igra, Naomi

254) Jackson, Letetia

255) Jackson, Sidney M.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

256) Jacobsen, Cassandra M.

257) James, Hon. Letitia

258) Jasrasaria, Jyoti

259) Jenner & Block LLP

260) Jennings, Hon. Kathleen

261) Johnson, Hayden

262) Johnson, Kristen A.

263) Jonathan L. Williams, P.A.

264) Jones, Benjamin

265) Jordan, Albert L.

266) Justman, Jeffrey P.

267) Kadoura, Justin

268) Kaul, Hon. Joshua L.

269) Kelson, Jared M.

270) Kennedy, Sandra

271) Kennedy, Sen. John F.

272) Khan, Joseph J.

273) Khanna, Abha

274) Klein, Benjamin

275) Klein, Zach

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

276) Klipper, Michael R.

277) Knudsen, Hon. Austin

278) Kousser, J. Morgan

279) Kramer Levin Robbins Russell

280) Kubiak, Krysia

281) LaCour Jr., Edmund G.

282) Lakin, Sophia Lin

283) Lancaster, Riley K.

284) Landry, Hon. Jeff

285) LaPorta, Jordan A.

286) Lawkowski, Gary M.

287) Lawsen, Nicki Leili

288) Lawyers Democracy Fund

289) Lawyers' Committee for Civil Rights under Law

290) League of Women Voters of Alabama

291) League of Women Voters of the United States

292) Leahy, Sen. Patrick

293) Lee, Theresa J.

294) Lewis, Davante

295) Lewis, Patrick T.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

296)  Li, Michael C.

297)  Livengood, Rebecca

298)  Livingston, Sen. Steve

299)  Lockhead, Tanner

300)  Louard, Janette

301)  Love, Rodney Allen

302)  Lowe, Clee Earnest

303)  Madduri, Lalitha D.

304)  Malhi, Jaywin Singh

305)  Manasco, Hon. Anna M.

306)  Marcus, Hon. Stanley

307)  Marshall, Hon. Steve

308)  Marshall, Mary E.

309)  Masuoka, Natalie

310)  Mauldin, Dylan

311)  Mayer Brown, LLP

312)  Maynard Cooper & Gale, P.C.

313)  McClendon, former Sen. Jim

314)  McCotter, R. Trent

315)  McCrary, Peyton

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

316)   McDougle, Sen. Ryan

317)   McDowell, Ephraim

318)   McKay, Charles A.

319)   McKinney, Charles

320)   McPhee, Shae

321)   McSherry, Erin K.

322)   McTootle, Arielle

323)   Medina, Richard A.

324)   Meehan, Taylor

325)   Meeks, Rep. Gregory

326)   Mehr, Benjamin I.

327)   Mellett, Timothy F.

328)   Melton Espy & Williams PC

329)   Menefee, Christian D.

330)   Menefee, Larry T.

331)   Merrill, Hon. John H.

332)   Messick, Misty S. Fairbanks

333)   Michel, Arturo, G.

334)   Michel, Christopher G.

335)   Miller, Jonathan B.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

336)  Milligan, Evan

337)  Mills, Christopher E.

338)  Milwaukee County, Wisconsin

339)  Mink, Richard

340)  Mollman, Alison Nicole

341)  Moore, Rep. Barry

342)  Moore, Rep. Timothy K.

343)  Moorer, Hon. Terry F.

344)  Moorer, Regina M.

345)  Morgan, Anne L.

346)  Morrisey, Hon. Patrick

347)  Morrison & Foerster LLP

348)  Moten, Derryn

349)  Murkowski, Sen. Lisa

350)  Murrill, Elizabeth B.

351)  NAACP (National Headquarters)

352)  NAACP Legal Defense and Educational Fund, Inc.

353)  NAACP Louisiana State Conference

354)  Naifeh, Stuart

355)  Nairne, Dorothy

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

356) Natarajan, Ranjana

357) National Congress of American Indians

358) National Republican Redistricting Trust

359) Native American Rights Fund

360) Neas, Ralph G.

361) Neiman, Jr., John C.

362) Nelson, Janai S.

363) Neronha, Hon. Peter F.

364) Nessel, Hon. Dana

365) Nwachukwu, Jennifer

366) O'Connor, Hon. John

367) O'Melveny & Myers LLP

368) O'Neil, David A.

369) Okinedo, Denzel Efemena

370) Olson, Lyndsey M.

371) Olsson, Jon

372) Ordway, Demian A.

373) Osher, Daniel C.

374) Overing, Robert M.

375) Palmer, Rep. Gary

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

376)  Palmore, Joseph R.

377)    Pantazis, Christina Rossi

378)    Pardue, Andrew

379)    Park, Jr., John J.

380)    Parker, Barbara J.

381)    Paul, Weiss, Rifkind, Wharton & Garrison LLP

382)    Paxton, Hon. Ken

383)    Penn & Seaborn LLC

384)    Penn, Myron C.

385)    Pérez, Efrén

386)    Persily, Dr. Nathaniel

387)    Peterson, Hon. Doug

388)    Phatak, Ashwin P.

389)    Phelan, Rep. Dade

390)    Phillips, Graham E.

391)    Phillips, Kaylan

392)    Platkin, Hon. Matthew J.

393)    Pol, Jr., Rodney

394)    Polio, Dennis

395)    Posimato, Joseph N.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

396)    Powell, Manasseh

397)    Power Coalition for Equity and Justice

398)    Prelogar, Hon. Elizabeth B.

399)    Presidential Coalition

400)    Price, Savannah

401)    Price, Shannon

402)    Pringle, Rep. Chris

403)    Project on Fair Representation

404)    Pryor, Thomas K.

405)    Public Interest Legal Foundation

406)    Public Rights Project

407)    Quigley, William P.

408)    Quillen, Henry C.

409)    Quinn, Connor, Weaver, Davies & Rouco LLP

410)    Racine, Hon. Karl A.

411)    Raoul, Hon. Kwame

412)    Reed, Dr. Joe L.

413)    Reed, Mayor Steven L.

414)    Relman Colfax PLLC

415)    Republican National Committee

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

416) Reyes, Bernadette

417) Reyes, Hon. Sean

418) Richardson, Valencia

419) Riggs, Allison

420) Riser, R. Volney

421) Robinson, Press

422) Roeck, Victoria

423) Rogers, Rep. Mike

424) Rokita, Hon. Todd

425) Rosborough, Davin M.

426) Rosenberg, Ezra D.

427) Rosenblum, Hon. Ellen F.

428) Ross, Deuel

429) Rouco, Richard P.

430) Roy, Marissa

431) Rubinstein, Reed D.

432) Rudensky, Yurij

433) Rupp, Michelle

434) Rutahindurwa, Makeba

435) Rutledge, Hon. Leslie

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

436)   Sabel Law Firm, LLC

437)   Sabel, Jr., Mark W.

438)   Sadasivan, Kathryn

439)   Sagar, Jo-Ann Tamila

440)   Sanders, former Sen. Henry "Hank"

441)   Sanders, Jarmal Jabbar

442)   Savitt, Adam P.

443)   Schmitt, Hon. Eric

444)   Schnapper-Casteras, John Paul

445)   Schnapper-Casteras PLLC

446)   Schulte Roth & Zabel LLP

447)   Schwarzenegger, Hon. Arnold

448)   Scodro, Michael A.

449)   Sedwick, Olivia N.

450)   Segura, Gary M.

451)   Seiss, Benjamin M.

452)   Sellers, Rep. Patrick

453)   Sells, Bryan L.

454)   Sen, Maya

455)   Sewell, Rep. Terri

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

456)   Shapiro, Carolyn E.

457)   Shapiro, Hon. Josh

458)   Shea, James L.

459)   Sheehy, Shawn T.

460)   Shikada, Hon. Holly T.

461)   Short, Caren E.

462)   Sidley Austin LLP

463)   Sims, Ambrose

464)   Sinclair, Winfield J.

465)   Singleton, Sen. Bobby

466)   Slagter, Paulina

467)   Slay, Leonette W.

468)   Smith, Brenton M.

469)   Smith, Paul M.

470)   Smith, Ronald

471)   Smitherman, Sen. Rodger

472)   Southern Coalition for Social Justice

473)   Southern Poverty Law Center

474)   Spero Law LLC

475)   Spies, Charles R.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

476)   Spital, Samuel

477)   Stand-Up Mobile

478)   State of Arizona

479)   State of Arkansas

480)   State of California

481)   State of Colorado

482)   State of Connecticut

483)   State of Delaware

484)   State of Georgia

485)   State of Hawaii

486)   State of Illinois

487)   State of Indiana

488)   State of Louisiana

489)   State of Maine

490)   State of Maryland

491)   State of Michigan

492)   State of Minnesota

493)   State of Mississippi

494)   State of Missouri

495)   State of Montana

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

496)  State of Nebraska

497)  State of Nevada

498)  State of New Jersey

499)  State of New York

500)  State of Oklahoma

501)  State of Oregon

502)  State of Rhode Island

503)  State of South Carolina

504)  State of Texas

505)  State of Utah

506)  State of Vermont

507)  State of Washington

508)  State of West Virginia

509)  State of Wisconsin

510)  States United Democracy Center

511)  Stein, Gary

512)  Steiner, Neil A.

513)  Stephanopoulos, Nicholas O.

514)  Stewart, Celina

515)  Stewart, Shelita M.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

516)  Still, W. Edward

517)  Stock, Danielle A. Gentin

518)  Stone, Khadidah

519)  Strong, Rep. Dale

520)  Sun, Christine P.

521)  Sundararajan, Anagha

522)  Tan, Caroline W.

523)  Taticchi, Mark D.

524)  Thomas, Wendell

525)  Thompson, Blayne R.

526)  Thornton, J. Mills

527)  Tong, Hon. William

528)  Torchinsky, Jason Brett

529)  Travis County, Texas

530)  Trento, Andrea W.

531)  Taunton, Michael P.

532)  Tuetken, Adam J.

533)  Turner, Reginald M.

534)  Turrill, Michael Lovejoy

535)  Tyson, Hon. Sheila D.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

536) U. W. Clemon, LLC

537) UCLA Voting Rights Project

538) Underwood, Barbara D.

539) United States Department of Justice

540) United States of America

541) Vale, Judith N.

542) Van Zile, Caroline S.

543) Vance, Robert Smith

544) Veroff, Julie

545) Wahl, John

546) Waknin, Sonni

547) Walker, Andrew

548) Walker, J. Dorman

549) Walker, Johannah

550) Wallace, Jordan, Ratliff and Brandt, LLC

551) Ward, Mayor Jason Q.

552) Warrington, David A.

553) Warshaw, Christopher S.

554) Washington, Alice

555) Washington, Brian E.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

556)   Watkins, Hon. W. Keith

557)   Webster, Anjali D.

558)   Weisberg, Liza

559)   Weiser, Hon. Philip J.

560)   Weitzman, Samuel E.

561)   Welborn, Kaitlin

562)   Weld, Hon. William F.

563)   Wenger, Edward M.

564)   West, Marisa

565)   Whatley, Jr., Joe R.

566)   Whatley Kallas LLP

567)   Whisler, Megan

568)   White Arnold & Dowd, PC

569)   White, J. Mark

570)   Whitman, Hon. Christine Todd

571)   Widell, Jr., Robert W.

572)   Wides, Burton V.

573)   Wiggins Childs Pantazis Fisher & Goldfarb, LLC

574)   Wilcox, Rep. J.T.

575)   Williams, Ayana D.

*Caster v. Secretary of State for the State of Ala.*, No. 26-11828

576)  Williams, Edward

577)  Williams, James R.

578)  Williams, Jonathan L.

579)  Wilmer Cutler Pickering Hale and Dorr LLP

580)  Wilson, Hon. Alan

581)  Wilson, Thomas A.

582)  Winfrey, Adia

583)  Woodard, J. Scott

584)  Woodfin, Mayor Randall

585)  Wydra, Elizabeth B.

586)  Young, Hon. Susanne R.

587)  Zepeda-Millán, Chris

588)  Ziegler, Donna R.

589)  Zimmermann, Diandra "Fu" Debrosse

Counsel further certifies that no additional publicly traded company or corporation has an interest in the outcome of this case or appeal.

Respectfully submitted this 27th day of May, 2026.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Secretary of State Wes Allen*

C-30 of 30

**TABLE OF CONTENTS**

Certificate of Interested Persons ................................................ 1

Table of Contents ........................................................................ i

Table of Authorities .................................................................... ii

Introduction ................................................................................ 1

Background ................................................................................. 3

Argument .................................................................................... 8

    I.     This Court will likely reverse the district court's §2 holding. ............................................................................ 10

         A.     The district court flouted *Callais* when it discarded permissible districting criteria as "illegitimate" and applied a racial criterion instead. ............................................................... 10

         B.     The district court did not find racial-bloc voting that cannot also be explained by partisan affiliation. ............................................................. 17

    II.    The equities warrant a stay. ............................................ 19

         A.     The district court turned *Purcell* on its head by using it as a sword to impose its court-drawn plan on the eve of an election. ............................... 19

         B.     The balance of harms and the public interest warrant a stay. ................................................ 20

Conclusion ................................................................................. 20

Certificate of Compliance ......................................................... 22

Certificate of Service ................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. LULAC*,
  146 S. Ct. 418 (2025) ................................................................. 19, 20

*Abbott v. Perez*,
  585 U.S. 579 (2018) ................................................................. 2, 3, 20

*Alexander v. SC Conf. of NAACP*,
  602 U.S. 1 (2024) ...........................................................................11

*Allen v. Milligan*,
  599 U.S. 1 (2023) ............................................................. 1, 2, 11, 14

*Banerian v. Benson*,
  589 F. Supp. 3d 735 (W.D. Mich. 2022) .............................................12

*Hewitt v. United States*,
  606 U.S. 419 (2025) ........................................................................19

*Holder v. Hall*,
  512 U.S. 874 (1994) ..........................................................................3

*Louisiana v. Callais*,
  146 S. Ct. 1131 (2026) ...............................................1-3, 6, 8, 10-18

*LULAC v. Perry*,
  548 U.S. 399 (2006) ........................................................................11

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ................................................................. 3, 19, 20

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
  589 U.S. 423 (2020) ........................................................................19

*Shaw v. Reno*,
  509 U.S. 630 (1993) ........................................................................15

**Other Authorities**

Alabama House Special Session 2026,
    www.youtube.com/watch?v=tptIfi94AWk#t=3h21m44s (May 6, 2026) .............6

Alabama Senate Special Session 2026,
    www.youtube.com/watch?v=2ecxRAvdl1U#t=1h14m26s (May 8, 2026)...........6

## INTRODUCTION[1]

The Court should immediately stay the district court's preliminary injunction precluding Alabama from using its congressional districts enacted in 2023 to address the Supreme Court's concerns in *Allen v. Milligan*, 599 U.S. 1 (2023). Among other faults, the district court's injunction halts ongoing election preparations for reasons that defy *Louisiana v. Callais*, 146 S. Ct. 1131 (2026).

The throughline of the district court's ruling is this: When the State redistricted in 2023, it had *no choice* but to crack the Gulf Coast and segregate white voters from black voters into different districts stretching the width of Alabama. Anything else, the district court has now twice held, would violate not only §2 but also the Constitution. Why? Because the district court believed that its preliminary-injunction ruling about a predecessor plan *required* the State to draw a second majority-minority district in any future redistricting legislation. But nothing in those preliminary proceedings on the 2021 Plan precluded Alabama from trying to navigate

---

[1] Secretary Allen is contemporaneously seeking a stay from the Supreme Court in *Milligan v. Allen*, No. 2:21-cv-1530 (N.D. Ala.) (three-judge court) and *Singleton v. Allen*, No. 2:21-cv-1291 (N.D. Ala.) (three-judge court). The opinion and order appealed from in this case is materially the same as those in *Milligan* and *Singleton*, except that the *Caster* order is signed by a single judge (incorporating the orders in *Milligan* and *Singleton*) and is appealable to this Court and the *Milligan* and *Singleton* orders are signed by a three-judge court and are appealable to the Supreme Court. *See* 28 U.S.C. §§ 1253, 2284(a). In the State's earlier appeals in this litigation, this Court held *Caster* in abeyance when the State moved for a stay pending appeal from the U.S. Supreme Court.

the "competing hazards of liability," *Abbott v. Perez*, 585 U.S. 579, 587 (2018), with new legislation. The 2023 Plan addressed the Supreme Court's concerns about the State's prioritization of core retention in 2021 at the cost of splitting the Black Belt region. *Allen*, 599 U.S. at 21-22. So in 2023, new legislation split that region as little as possible, while also keeping together the Gulf Coast as the State had done for 50 years.

*Callais* vindicates Alabama's position on the lawfulness of the 2023 Plan, yet the district court decided in one week that *Callais* changed nothing. The court did not hold Plaintiffs to their burden to bring alternative maps that "meet all the State's legitimate districting objectives," 146 S. Ct. at 1159, because in its view, Alabama's lawful and longstanding priorities were not "legitimate," App.55. It did not matter to the district court that drawing an additional race-based district came at the cost of sacrificing communities of interest and pairing incumbents. *Id.* If anything is "entirely clearcut after *Callais*," App.12, it is that the 2023 Plan should never have been enjoined in the first place.

Worse, the district court doubled down on its constitutional holding that finds no home in our Constitution: that Alabama intentionally discriminated by refusing to intentionally discriminate. The district court faulted the State for denying "opportunity" to minority voters and "diluting" votes without once acknowledging how *Callais* itself refuted the district court's pre-*Callais* holding on that score. *See*

2

*Callais*, 146 S. Ct. at 1154-55. It cannot be that the *only* constitutional map for the State to have drawn this redistricting cycle was one where white voters are drawn into white districts and given white representatives and black voters "drawn into 'black districts' and given 'black representatives,'" a scheme "repugnant" to the Constitution itself. *Holder v. Hall*, 512 U.S. 874, 905-06 (1994) (Thomas, J., concurring in the judgment).

A stay is warranted so that Alabama is not again precluded from using its legislatively enacted 2023 Plan based on a decision that defies *Callais*, manipulates the *Purcell* principle, and offends the Constitution's promise of equal protection for all. So that the State can use the 2023 Plan in the 2026 elections, the State Defendants respectfully request a ruling from this Court as soon as practicable. In a previous iteration of this case, this Court held the appeal in abeyance within one day of the filing of the motion to stay. *See* Order of January 28, 2022, *Caster v. Merrill*, No. 22-10272.

## BACKGROUND

Alabama seeks to use its own map to conduct elections this year because "the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Perez*, 585 U.S. at 602 n.17. The chief obstacle remains the district court's view that the State defied a preliminary injunction regarding a since-repealed redistricting plan when it enacted an entirely new redistricting plan that, by the district

court's lights, was a "purposeful attempt to rob Black Alabamians of an equal opportunity under the law to elect candidates of their choice"—all because the State declined to district on the basis of race, persisted in keeping a community of interest whole, and declined to redistrict black voters in Mobile with black voters 200-some miles away. DE490:15-16.[2]

**1.** In 2021, Alabama redistricted, and litigation ensued immediately. Plaintiffs in three related actions—*Caster*, *Milligan*, and *Singleton*—alleged that the 2021 Plan simultaneously violated §2 of the Voting Rights Act by considering race too little and violated the Constitution by considering race too much. DE107:34-41. The district court granted a preliminary injunction on the ground that the 2021 Plan likely violated §2 and did not reach the constitutional claim. *Id.* at 214-17. The Supreme Court upheld the preliminary injunction against the 2021 Plan based on the preliminary record before the Court at that time. 599 U.S. at 42. The Court faulted the 2021 Plan for prioritizing core retention at the cost of splintering the Black Belt region. *See id.* at 21-22.

Rather than continue to litigate the lawfulness of some of those features of the 2021 Plan, the State chose to redistrict in direct response to *Allen*. That 2023 Plan departed from past redistricting plans and reunified the Black Belt in as few districts

---

[2] "DE" citations refer to entries in *Allen v. Milligan*, No. 2:21-cv-1536, and to the ECF pagination.

4

as possible. At the same time, the State continued to adhere to other nonracial political priorities—namely declining to pair incumbents or to split the Gulf Coast, so as to ensure that a community of interest would remain unified in one district and represented by one voice in Congress as it had for over 50 years. DE481:246. And since it had become a matter of dispute, the Legislature made a record to establish what is obvious to longtime Alabamians and first-time visitors alike: that the Gulf Coast is a unique community of interest. DE490:557-60 (legislative findings).

That wasn't good enough, according to the district court. Section 2 *required* the State to split the Gulf Coast to create an additional majority-minority district "or something quite close to it." DE490:517 (cleaned up). Worse, the State's desire to keep the Gulf Coast unified—while also now keeping the Black Belt unified too— was invidious racial discrimination. Although the district court recognized in earlier proceedings that keeping the Gulf Coast together accrued "political advantages … for those areas," and although it "expect[ed] that the Legislature [would] assign them great weight" in its next map, DE107:170-71, when the Legislature pursued those advantages and assigned that great weight to the Gulf Coast in the 2023 Plan, the court found *racial animus*. What the district court said it *expected* in 2022, it found "disturb[ing]" in 2023 (DE272:8) and again in 2025 (DE490:429). The legislative findings about the Gulf Coast were deemed evidence of a racist desire "to prescribe

5

a majority-White congressional district" and to "exalt[ ]" it "over every other districting principle, including compliance with federal law." DE490:429-30.

Based on those findings (and before *Callais*), the district court entered judgment against the State for violating §2, DE490, retained jurisdiction through 2030, DE509.

**2.** Alabama asked the Supreme Court to summarily reverse or grant plenary review of the injunctions precluding the use of the 2023 Plan. Nos. 25-243, 25-273, 25-274. After the Supreme Court's decision in *Callais*, the State moved for expedited consideration because *Callais* confirmed the district court should have required Plaintiffs to account for the State's redistricting priorities before enjoining use of the 2023 Plan. Around the same time, the Legislature passed a law to provide for a special primary election in the event that injunctions against the 2023 Plan were lifted. In addition to citing traditional districting principles and political goals, legislators defending the 2023 Plan explained that it had been "drawn in a partisan way" to "benefit Republicans,"[3] and that it gave a better "opportunity for the Republicans to win."[4]

---

[3] Alabama Senate Special Session 2026, www.youtube.com/watch?v=2ecxRAvdl1U#t=1h14m26s (May 8, 2026) (Senator Albritton).

[4] Alabama House Special Session 2026, www.youtube.com/watch?v=tptIfi94AWk#t=3h21m44s (May 6, 2026) (Representative Pringle).

On May 11, 2026, the Supreme Court granted the State's motion to expedite, vacated the injunctions, and issued its judgment forthwith. *See, e.g.*, Order, *Allen v. Milligan*, No. 25-274 (U.S. May 11, 2026).

**3.** With the injunctions vacated, the Governor announced a special primary election under the 2023 Plan for affected districts. App.113. The Secretary of State notified the public, posted the 2023 Plan on the office's official government webpage, and began communicating with vendors and local election officials. App.113-14. The Governor issued a new administrative calendar for the primary. App.114-15. Candidates qualified to run for Congress under the 2023 Plan. App.115. And the local boards of registrars in each county began the work to understand which voters would need to be moved to comply with the 2023 Plan. App.115-17, 123-25.

Meanwhile, Plaintiffs moved for a renewed injunction, and the district court held a hearing on Friday, May 22, at which the Secretary of State's Director of Elections, Jeff Elrod, was ordered to appear and testify. DE528.

Director Elrod testified that the State could implement the 2023 Plan. He acknowledged that "[w]hile it is an aggressive timeline, I think it is safe to say that registrars could get done with what they have assigned." App.236. All but three of the affected counties can reassign their voters by "mass change"—*i.e.*, all voters in the county would be reassigned simultaneously to the new district. App.120-21. Director Elrod testified that even the three split counties could complete their

7

assignments in time, adding that computerized mapping systems and vendor support are more common today than just a few years ago. App.121-23, 130. Alabama has the tools and capacity to accomplish the reassignment process.

4.   Nonetheless—with no new evidentiary showing after *Callais*—the district court yesterday entered an order again preliminarily enjoining the use of the 2023 Plan. *See* App.1-102. As for *Callais*, the court concluded "Alabama cannot use *Callais* to legitimize its pre-*Callais* decision[.]" App.44. Even after yesterday's order, it remains undisputed that an additional majority-minority district cannot be drawn without spitting the Gulf Coast and separating that region's black voters and white voters. App.32. To the district court, that failure of proof was just evidence that the State's criteria were not "legitimate," so it granted preliminary relief on §2 grounds as well. App.55.

## ARGUMENT

In *Callais*, the Court held that §2 claims require alternative maps that "meet all the State's legitimate districting objectives … just as well." 146 S. Ct. at 1159. Nevertheless, the district court has found again that the 2023 Plan was discriminatory *at the time*—even if not today, after *Callais*. App.43-44. But it's the same Constitution. The 2023 Plan was lawful then, and it is lawful now.

The district court enjoined Alabama's Plan without putting Plaintiffs to the evidentiary test that *Callais* says is now required to "ensure[ ] that § 2 of the Voting

Rights Act does not exceed Congress's authority under § 2 of the Fifteenth Amendment." *Callais*, 146 S. Ct. at 1156. After a full trial in 2025, it is undisputed that no alternative to the State's map "achieve[s] all the political goals of the Legislature." DE490:525; *see also* DE490:345. Those goals included (1) drawing the Gulf Coast counties in one district; (2) reunifying the Black Belt region by placing the Black Belt counties in as few districts as possible; and (3) avoiding contests between incumbents. The first has been a goal of the Legislature for 50 years. The second became a goal after the district court held it was "important" in January 2022. DE107:155; *see id.* at 156, 164-65, 169. And the third is a "traditional" factor, *Callais*, 146 S. Ct. at 1156, especially where threatened incumbents share their party with the redistricting legislature. The district court threw all that out the window—substituting its own prerogatives for those of the legislature. *E.g.*, App.55 (refusing to treat the Gulf Coast, even though a conceded community of interest, as a "'legitimate' objective that an illustrative plan must meet"). As to the remainder of the updated *Gingles* test, the district court refashioned the trial record but could not close the gap between what Plaintiffs brought to trial before *Callais* and what *Callais* now demands.

**I.    This Court will likely reverse the district court's §2 holding.**

> **A.    The district court flouted *Callais* when it discarded permissible districting criteria as "illegitimate" and applied a racial criterion instead.**

Under the updated *Gingles* framework, Plaintiffs must bring illustrative maps that "meet all the State's legitimate districting objectives, including traditional districting criteria and the State's specific political goals." *Callais*, 146 S. Ct. at 1159. They did not. As the district court found in 2025, no alternative in the record achieved the State's objectives. *E.g.*, DE490:345, 525. They all failed to keep the Gulf Coast in one congressional district, and they failed to protect incumbents. They sacrificed those goals to combine so-called "Black Mobile" (DE272:158) with parts of the Black Belt to form a new majority-black district. Lacking comparator maps, Plaintiffs could not begin to show discrimination, and their alternatives could not have been adopted by the State. But as if *Callais* never happened, the district court held that Plaintiffs had drawn "an additional reasonably configured majority-Black district," even if that meant cracking the Gulf Coast and ignoring the State's other political goals including not pairing incumbents. App.54.

**1. The Gulf Coast.**  It is undisputed that keeping the Gulf Coast together in a congressional district is one of "the State's specified political goals," *Callais*, 146 S. Ct. at 1159, and that no alternative to the 2023 Plan meets that goal. The district court cannot ignore its earlier findings to transform a well-established and long-held

goal of the Legislature into a "novel and exacting instruction [ ]" cooked up to defy the courts. App.38. To the contrary, "maintaining communities of interest" falls well within the class of "traditional districting principles." *LULAC v. Perry*, 548 U.S. 399, 433 (2006). And "§2 never requires adoption of districts that violate traditional redistricting principles." *Allen*, 599 U.S. at 30. Consider: If the State had *abandoned* this commitment in order to "combine[ ] two farflung segments of a racial group," *LULAC*, 548 U.S. at 433, it would have found itself in the same position as Louisiana, which violated the Constitution by drawing a "second majority-minority district … [that] stretche[d] some 250 miles" across the State. *Callais*, 146 S. Ct. at 1152. Declining to *prioritize* race, the 2023 Plan did not violate §2.

Left intact, the district court's preliminary-injunction opinion will become the roadmap for evading *Callais*: In just *two paragraphs*, the district court discarded the Legislature's goal on the ground that it "was the linchpin of a calculated effort to discriminate based on race." App.55. This new opinion accuses the State of "'offensive and demeaning' conduct," even though federal courts "should not be quick to hurl such accusations at the political branches." *Alexander v. SC Conf. of NAACP*, 602 U.S. 1, 11 (2024). The accusation is also false: The Gulf Coast has been kept together for *50 years*, and it was one of the State's primary defenses when this lawsuit was first filed in 2021; it was not "adopted … for unconstitutional purposes" in 2023. App.55. And if the court was not willing to "accuse any legislator of racism,"

11

App.31, it should have been even more loathe to accuse the *whole Legislature* of racial animus. There can be no comparison between the Legislature's interest in giving a unified voice to the Gulf region and "clos[ing] public schools" in 1964 to thwart "desegregat[ion]." App.56.

In the end, the Legislature adopted this political goal long before the 2021 Plan, readopted it in the 2021 and 2023 Plans, and has maintained a consistent position throughout this litigation that the Gulf Coast is a nonracial community of interest. That shouldn't even be controversial, and certainly should be entitled to some deference by a federal court under the presumption of good faith. While the district court decided for itself that splitting the Gulf Coast wouldn't "necessarily harm [it]," DE490:355, that's a political question for a political body. *Accord Banerian v. Benson*, 589 F. Supp. 3d 735, 738 (W.D. Mich. 2022).

**2. Incumbent Protection.** A second criterion which the 2023 Plan achieved but alternatives did not was protecting incumbent representatives whom "the legislature sought to protect." *Callais*, 146 S. Ct. at 1161; *see* App.88 (SB5) ("The congressional districting plan shall not pair incumbent members of Congress within the same district."); DE490:86 (State's mapmaker: "I was looking at … not pairing incumbents, which, obviously we had incumbents that could have been paired there in terms of Barry Moore in Coffee County and Jerry Carl in Mobile[.]"). In its 2025 injunction, the district court refused to give "weight" to incumbency because it

12

thought that would "defeat the Voting Rights Act." DE490:361. In its 2026 injunction, the district court found that illustrative maps were good enough because they "protect[ ] all incumbents *except one*." App.56-57 (emphasis added).

But §2 liability cannot be proven with an illustrative map that "fail[s] to meet the State's political goals, including incumbency protection." *Callais*, 146 S. Ct. at 1161. This failure caused a direct and undeniable harm to the State, as one of its incumbents "was not reelected to Congress." DE490:361. As in *Callais*, "because the [ ] illustrative maps failed to protect all the incumbents that the State sought to shield, the plaintiffs did not meet their burden on [the first *Gingles*] precondition." *Callais*, 146 S. Ct. at 1161.

Yesterday, the district court addressed incumbents in one sentence, finding that the State's allegedly "calculated effort to discriminate based on race [ ] also included a novel categorical bar on pairing incumbents." App.55. Of course, incumbent protection was hardly novel in 2023. *See, e.g.*, DE107:220 (2021 guidelines). The court clarified in a footnote that other States can constitutionally "protect[ ] incumbents" but not Alabama "on these unique facts and in the unique posture of these cases." App.56 n.17. This inexplicable holding contradicts *Callais*; nothing supports a finding that the Legislature's desire to protect Rep. Jerry Carl and Rep. Barry Moore was "pretext for an unconstitutional end" or otherwise "intentionally discriminat[ory]." App.56.

13

**3. The Black Belt.** After the 2021 Plan was preliminarily enjoined in part because "[t]here would be a split community of interest" in the Black Belt, *Allen*, 599 U.S. at 21, the Legislature made it a non-negotiable priority to put the Black Belt in as few districts as possible. The district court erred by crediting *Gingles* maps that failed on this score and by transforming this nonracial criterion into a racial one.

The district court reaffirmed its racialized approach to the Black Belt yesterday, claiming that the Legislature did not "treat[] the Black Belt and Gulf Coast equally" because "half the Black Belt Counties were placed in majority-White districts." App.35. In 2025, it described "respect" for the Black Belt in terms of "Black voting strength." DE490:360-61. It cast aside the Gulf Coast objective on the ground that splitting a "majority-White district" "precipitates no such racially discriminatory harm." *Id.* Not only was this reasoning circular—under *Callais*, "Black voting strength" (*id.*) cannot be used to define the "baseline … chance" to elect one's preferred candidates, *Callais*, 146 S. Ct. at 1154—it clearly turned the State's nonracial districting criterion into a racial one. *See* App.34 (criticizing in its *Arlington Heights* analysis the fact that the 2023 Plan "placed nine of the eighteen Black Belt counties in majority-White districts").

**4.** The district court places extraordinary weight on its belief that Plaintiffs' experts and the Special Master did not draw "boundaries … on the basis of race" or "display racial demographic data while drawing districts." App.18; *see* App.50-54.

It says with confidence that "there is no world in which we … demanded the State do anything noxious." App.43; *see Shaw v. Reno*, 509 U.S. 630, 643 (1993) (recognizing racial gerrymanders as "odious"). But even if the Special Master's "race-blind" laundering of Plaintiffs' race-based formula were credited, that merely shows "that the State *could* create an additional majority-minority district." *Callais*, 146 S. Ct. at 1158. The district court was wrong to think that just because a "race-blind" map *could* be drawn, that "disproves that anything unconstitutional was required." App.43.

Here, the alternative maps are unconstitutional because they advance a racial goal at the expense of the State's nonracial goals. The process may be called "race-blind" in the narrow sense that the mapmakers attested they did not look at the racial demographics of voting precincts—although that means little if, for example, they looked at other race-based maps that already provided the formula—but they still used race as an unbending and non-negotiable criterion. *See, e.g.*, DE590:325 (recounting Dr. Duchin's testimony that "race is a consideration" of hers but just "doesn't dominate others"); App.52 (noting that Dr. Duchin "periodically checked" the racial parameters of the plan as she was drawing, just emphasizing it wasn't part of her "granular" process). Plaintiffs and the district court *directed* their mapmakers to draw a map with two majority-minority congressional districts, even after it was

15

conceded that two such districts could be achieved only by jettisoning the State's nonracial goals. *But see Callais*, 146 S. Ct. at 1159.

Consequently, the district court's assurance that Plaintiffs had not offered (and it was not ordering) a racial gerrymander was built on a faulty premise. That Dr. Duchin could draw "literally thousands" of maps with two majority-minority districts *without holding constant* the State's race-neutral principles is legally meaningless. App.52; *see Callais*, 146 S. Ct. at 1159. She trained her algorithms to hit a racial target before hitting the State's nonracial targets. *Contra Callais*, 146 S. Ct. at 1159. With those parameters set, the allegedly "race-blind" process was not race blind at all. Just like in *Robinson*, race was baked into the process because the requirement to "configure [a district] to achieve a black voting-age population over 50%" was an "express acknowledgment that race played a role in the drawing of district lines." *Callais*, 146 S. Ct. at 1161.

That was error, even if it could be believed that the mapmakers just happened to pluck the black voters in Mobile out of District 1 to join them with voters on the other side of the State in District 2. Although the State need not prove that the mapmakers used race at a "granular" level, App.52, this case *is just like* "in Louisiana, where the geographic dispersion of the Black population required a remedial district to 'slic[e] through' multiple metropolitan areas to scoop up pockets of predominantly Black populations," *contra* App.54-55. There was no other reason to draw

16

lines around "Black Mobile" (DE490:263) and connect it with Montgomery and the eastern border of the State hundreds of miles away.

### B.    The district court did not find racial-bloc voting that cannot also be explained by partisan affiliation.

In 2025, the district court found that it "cannot separate voters' racial considerations from their party affiliations" based on "this evidentiary record." DE490:401. Recounting the same evidence in 2026, the district court found that it *could* disentangle party and race. App.57-61. That was clear error, because it continues to infer racial bloc voting from analysis of just a few elections spanning decades. Its new holding committed legal error too. Even if there were some racial effect in some elections—after controlling for party—the effect of partisan affiliation to drive voting dwarfs it. There is no evidence that a white majority votes "as a bloc … to defeat" black candidates as was the case when the Voting Rights Act was enacted. *Callais*, 146 S. Ct. at 1146.

The district court did not seriously commit itself to disentangling race and politics as *Callais* directed. From the jump, it wrote that the factor is "racially polarized voting"—as it used to be before *Callais*—and cited evidence about the electoral success of black candidates *without controlling for party*. App.20; App.57-58 ("We adhere to our earlier findings about the evidence of these patterns."). But evidence that "most Black Alabamians are Democrats[ ] and the Republican Party is Alabama's dominant political party," App.61, is not "substantial evidence that Black

17

Alabamians have less opportunity than other Alabamians to elect representatives of their choice," App.20. That conflation of race and politics does not survive *Callais*. 146 S. Ct. at 1159-60.

The district court's quick attempt to disentangle race and politics, on the heels of *Callais* without any new evidence, was on the most threadbare record. The court cited a CNN exit poll from the 2008 presidential election. App.58. It cited results from the 2024 Republican primary in which white candidates outperformed black candidates—without acknowledging or controlling for any other factors that could have explained that outcome. *Id.* It cited two mayoral runoffs and a single democratic congressional primary. *Id.* This is the sum total of the empirical evidence it used to find a "stark pattern[ ]" that *white voters* vote *as a bloc* to defeat black candidates for purposes of declaring the State's congressional districts unlawful, App.61, while waiving away the election of black Republicans in majority white districts, App.59, n.18, among other substantial additional evidence presented by the State. DE481:125-50. This was clear error. Plaintiffs must prove that polarization "cannot be explained by partisan affiliation," not that there exists *some* polarization in *some* elections across multiple decades that *might* be explained by race. *Callais*, 146 S. Ct. at 1159. If it worked that way, the existence of a handful of racist voters would be enough to satisfy *Gingles*. But that would not at all reflect "circumstances [ ] comparable to those in *White [v. Regester]*." *Callais*, 146 S. Ct. at 1162.

18

## II.    The equities warrant a stay.

### A.    The district court turned *Purcell* on its head by using it as a sword to impose its court-drawn plan on the eve of an election.

The district court declined to apply *Purcell* on the ground that there would be administrative advantages and cost savings to using the court-drawn plan because local registrars had not yet reassigned voters in accordance with the 2023 Plan. App.8-11. But *Purcell* is a shield for legislatively enacted election rules, not court-imposed ones. It *precludes* "lower federal courts" from "alter[ing] the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020); *Purcell v. Gonzalez*, 549 U.S. 1 (2006). Recognizing that States, not courts, have the expertise to set election rules, *Purcell* requires federal courts to stay their hand. *See Abbott v. LULAC*, 146 S. Ct. 418, 419 (2025).

The 2023 Plan is a duly enacted Alabama statute. Ala. Code § 17-14-70. When the Supreme Court vacated the district court's injunction, the 2023 Plan had full legal force—"as though the vacated order never occurred," *Hewitt v. United States*, 606 U.S. 419, 431 (2025). State officials, local officials, parties, candidates, and voters understood the ramifications immediately because the Legislature had already enacted a law providing for a special election under just this circumstance. *See* Ala. Act No. 2026-612. By proclamation the day after the Supreme Court's vacatur orders, the Governor announced a special primary and issued a writ of election. There were new qualifying deadlines. Candidates may have stopped campaigning in their

19

old districts—anticipating the new August primary under new district lines; voters may not have voted or may have voted differently in the May primary with the understanding that it would not count. There were preparations and expectations that the August special primary election would be conducted under the 2023 Plan—until the district court stepped in.

It was always going to be a challenge for state election officials to hold a special primary, but *that was the Legislature's and the Governor's choice*. If *Purcell* means anything, it means the federal judiciary cannot pick and choose the logistical costs the State is not entitled to accept.

### B.    The balance of harms and the public interest warrant a stay.

Alabama and the public face irreparable harm unless a stay issues because they will be unable to use the State's "duly enacted plans" for the 2026 election. *Perez*, 585 U.S. at 602 n.17. Worse still, voters will be forced to vote under a court-drawn racially gerrymandered map that does not meet Alabama's legitimate districting goals. The balance of the equities thus favor staying the district court's last-minute intrusion into Alabama's election. *See LULAC*, 146 S. Ct. at 419.

### CONCLUSION

This Court should stay the preliminary injunction pending appeal. Alternatively, this Court should hold this appeal, including the motion to stay, in abeyance, as it did in earlier litigation. An order holding the appeal in abeyance would allow

20

the Supreme Court to consider *Caster* alongside *Milligan* and *Singleton*, as it did in *Allen*.

Respectfully submitted,

Steve Marshall
  *Alabama Attorney General*

s/ A. Barrett Bowdre
A. Barrett Bowdre
  *Solicitor General*

Robert M. Overing
  *Principal Deputy Solicitor General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

*Counsel for Secretary of State Allen*

MAY 27, 2026

21

## CERTIFICATE OF COMPLIANCE

1.     This motion complies with Rule 27(d)(2) because it contains 4,905 words, including all headings, footnotes, and quotations, and excluding the parts of the response exempted under Rule 32(f).

2.     In addition, this motion complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Secretary of State Allen*

## CERTIFICATE OF SERVICE

I certify that on May 27, 2026, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

<u>s/ A. Barrett Bowdre</u>
A. Barrett Bowdre
*Counsel for Secretary of State Allen*

23